IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

EDNA L. IRVINE                                          CV 08-1044-MA

       Plaintiff,                                   OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

RICHARD A. SLY
1001 S.W. 5th Ave., Ste. 310
Portland, OR 97204
(503) 224-0436

LINDA ZISKIN
P.O. Box 2237
Lake Oswego, OR 97035
(503) 889-0472

       Attorneys for Plaintiff

DWIGHT C. HOLTON
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1 - OPINION AND ORDER

DAVID MORADO
Regional Chief Counsel
KATHRYN A. MILLER
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2240

      Attorneys for Defendant

MARSH, Judge.

    Plaintiff Edna Irvine seeks judicial review of the Commissioner's final decision denying her September 10, 2004, applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

    Plaintiff claims she has been disabled since September 1, 2004, because of pain in her lower back, knee, abdomen, wrists, and feet, and because of depression associated with those impairments.  The Commissioner denied her claims initially and on reconsideration.  On October 22, 2007, the Administrative Law Judge (ALJ) held an evidentiary hearing and on January 12, 2008, he issued a decision that plaintiff is not disabled.  On July 8, 2008, the Appeals Council denied plaintiff's request for further review.  The ALJ's decision, therefore, is the Commissioner's final decision for purposes of judicial review.

    Plaintiff seeks an Order from this court reversing the Commissioner's final decision and remanding the case for the

2   - OPINION AND ORDER

payment of benefits.  For the following reasons, I **REVERSE** the final decision of the Commissioner and **REMAND** this action for further proceedings.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920.  Plaintiff bears the burden of proof at Steps One through Four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset date of her disability on September 1, 2004.

At Step Two, the ALJ found plaintiff suffers from the following severe impairments:  Residual symptoms of carpal tunnel syndrome in her right wrist; chronic scapholunate ligament tear in her left wrist; and obstructive pulmonary syndrome.  20 C.F.R. §404.1520(c) and §416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments do not meet or equal any listed impairment and she has the residual functional capacity to perform light work that is limited to

3 - OPINION AND ORDER

occasional gross handling that would require a forceful grip, and occasional climbing, kneeling, or crawling. She should avoid concentrated exposure to fumes, smoke, and dust.

At Step Four, the ALJ found plaintiff has the residual functional capacity to perform her past relevant work as a property manager, assistant manager of a fast food restaurant, or security guard.

Based on his finding at Step Four, the ALJ did not make any finding at Step 5.

Consistent with the above findings, the ALJ found plaintiff is not disabled and denied her claims for DIB and SSI benefits.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

5 - OPINION AND ORDER

**PLAINTIFF'S ISSUES ON REVIEW**

Plaintiff asserts the ALJ erred as follows: Finding she was less than credible; failing to give germane reasons for rejecting lay witness testimony; failing to find at Step 2 that her impairments, including sleep apnea, pulmonary disorder, headaches, obesity, and knee, low back, foot, and abdominal pain, with resulting depression, are severe impairments; making unsubstantiated findings at Step 3; and finding she was able to perform her past relevant work at Step 4.

**PLAINTIFF'S TESTIMONY/EVIDENCE**

Plaintiff's evidence is drawn from her disability applications, hearing testimony, and work history report.

a.  **Education/Work History.**

Plaintiff was 55 years old on the date of the hearing. She has a High School GED and nurse's aide training. Since 1995, she has worked as a security guard, shipping and receiving clerk, store shelf-stocker, and trailer park manager. Her last job before claiming disability benefits was as an apartment manager. She quit that job in September 2004 because she was unable to walk up and down stairs to show apartments to potential renters.

b.  **Medical Issues.**

While plaintiff was working at the trailer park, she had surgery on both feet to remove bunions. Between October 2003 and

6 - OPINION AND ORDER

March 2005, plaintiff underwent multiple abdominal surgical procedures. In March 2005, she had surgery to repair torn ligaments in her left wrist. In August 2005, she underwent a carpal tunnel release in her right wrist.

Plaintiff complains of pain on a daily basis, including pain in her hands, wrists, feet, and stomach, arising from the prior surgeries, as well as leg cramping, and knee and back pain. The pain in her hands prevents her from opening bottle caps.

Plaintiff has tried unsuccessfully to relieve her pain by soaking in a hot tub, running shower water over her head, pacing the floor, laying down, and watching television for distraction. Plaintiff is obese and has difficulty breathing. She quit smoking in 2003.

Plaintiff has not been prescribed pain medications since her Kaiser Permanente medical insurance lapsed.

## **LAY WITNESS EVIDENCE**

Plaintiff's companion, Kermit Johnson, has known plaintiff for twenty years. He completed a questionnaire and testified about plaintiff's daily activities, which include making her bed and dusting/cleaning. If she feels good, she will check on jobs but does not get call backs. If she does not feel good, she takes Advil and uses a heating pad.

7 - OPINION AND ORDER

Plaintiff gets around by car. She also walks in the park or on walk trails. Johnson helps with her grocery shopping, either doing it himself or carrying her bags.

Plaintiff could do anything before the onset of her present physical impairments, including running and standing on her feet for longer periods of time. She used to cook all her meals, but now she eats microwaveable frozen dishes.

Johnson testified that plaintiff's inability to use her hands, her stomach pains, and her difficulty breathing are the reasons why he does not believe she is now able to work. She had difficulty climbing the stairs when she worked in her last job as an apartment manager.

Johnson also testified that plaintiff was previously insured and obtained medical treatment from Kaiser Permanente but transferred to Providence. Providence, however, did "nothing for her" because her medical records from Kaiser were not available.

### MEDICAL EVIDENCE

**a.   Medical Treatment - Kaiser.**

The relevant records reflect plaintiff received treatment from November 2000 to August 2005 through Kaiser Permanente or the Kaiser Health Plan. No treatment provider has opined as to whether plaintiff suffers from a disability that precludes her from engaging in substantial gainful activity.

1.  **Breathing Difficulties**.

In November 2000, plaintiff complained of shortness of breath. On examination there was no evidence of acute cardiopulmonary disease.

In February 2001, plaintiff complained of fatigue and having difficulty breathing. She was diagnosed with chronic obstructive pulmonary disease (COPD) and advised to quit smoking. She was prescribed Atrovent, which is an inhalant.

In August 2001, plaintiff complained of a cough with chest wall pain. She stated she was planning to quit cigarettes.

In June 2005, plaintiff was diagnosed as having with dypsnea (breathing difficulties) and sleep apnea.

In August 2005, plaintiff was given a stress test on a treadmill. She stopped because she was exhausted and short of breath. Her functional capacity was poor and well below that of a healthy sedentary person. Her performance was consistent with that of a deconditioned obese person.

2.  **Headaches**.

In March 2001, plaintiff complained of persistent stiff neck and headache that lasted for two weeks. She was diagnosed as having a tension headache and was prescribed Vicodin.

In November 2002, plaintiff passed out because of a headache and nausea resulting in a closed head injury. She estimated she

9 - OPINION AND ORDER

was unconscious for more than one minute.

### 3. Foot Pain.

In October 2002, plaintiff had surgical procedures to treat a stress fracture of the second metatarsal of her left foot and to relieve pain caused by bunions on both feet.

In January 2003, plaintiff complained that she had severe pain in her feet. She was advised "to get off [her] feet."

In February-March 2003, plaintiff had difficulty sleeping because of pain and swelling in her right foot.

In May 2003, plaintiff's incisions from the surgical procedures on her feet were well-healed. Her range of motion in the left foot was within normal limits and slightly diminished in the right foot, and she had no pain on motion. A possible cyst was noted on the third metatarsal bone in her left foot.

In June 2004, plaintiff again complained of pain in both feet. She was injected with local anaesthetic medication.

### 4. Abdominal Pain.

In October 2003, plaintiff underwent a surgical resection of her colon through the abdomen to treat a longstanding history of constipation. Two weeks later, plaintiff had surgical procedures that involved the "creation of a loop ileostomy" to repair an anastomotic leak (breakdown of the suture from the prior surgical procedure) which had caused intestinal fluid to leak into the area of the previous surgical procedures.

Plaintiff was then transferred to a skilled nursing facility, where she remained for two weeks before being discharged. A month later, plaintiff underwent a procedure to close the ileostomy.

In June and July 2004, plaintiff complained of right-side abdominal pain and was "angry about pain medication."

In August 2004, plaintiff was anxious to have a surgical procedure to minimize the pain caused by her abdominal scar. She was advised that the scar was still too immature for the procedure and she should lose weight. Plaintiff stated she was not interested in losing weight or waiting for the surgical procedure and she "abruptly stood up and left."

In September 2004, while she was being seen for hand and wrist pain, plaintiff was distraught about the pain caused by her abdominal scar and stated that if she has "to live like this, [she] would rather drive her car over a cliff."

In March 2005, plaintiff underwent a surgical procedure to repair a hernia in the area of her prior abdominal surgery.

In July 2005, plaintiff continued to complain of recurrent pain around the incision in her abdomen.

 **5. Back Pain**.

In February 2004, plaintiff had a CT Scan which showed mild degenerative disc disease at L4-5 and L5-S1 with minimal osteoarthritis at L5-S1.

11 - OPINION AND ORDER

**6. Knee Pain**.

In July 2004, plaintiff complained of bilateral knee pain for the past two months. On examination, there was no swelling, giving way, or locking. X-rays were normal.

In May 2005, Plaintiff complained again of progressive knee pain. X-rays again were normal.

**7. Wrist/Hand Pain**.

In June 2004, plaintiff complained of bilateral hand pain, causing her difficulty using a keyboard and opening jars.

In September 2004, plaintiff complained of numbness and pain over the past year in her thumb and fingers of both hands. She had been wearing a wrist splint on both hands for a week and had been doing exercises for six months. She underwent diagnostic studies of both wrists, which revealed a normal left wrist and moderate neuropathy across the right wrist.

In November 2004, x-rays of both wrists were normal.

In March 2005, plaintiff underwent a successful bone graft fusion in her left wrist. Follow up examinations showed good alignment and both wrists were stable.

In June 2005, the pin inserted as part of the fusion was removed. Plaintiff was advised to wear a wrist brace at night and while she was driving.

In August 2005, plaintiff underwent a carpal tunnel release procedure on her right wrist.

b.      **Medical Consultation - MaryAnn Westfall, M.D.**
                                **Sharon Eder, M.D.**

After reviewing plaintiff's medical records, Dr. Westfall opined and Dr. Kehrli affirmed that plaintiff is able to lift 20 lbs occasionally and 10 lbs frequently, stand, walk, or sit for six hours in an eight-hour workday; push and pull on an unlimited basis; climb ramps/stairs/ladders occasionally, balance, stoop, and crouch frequently; and kneel/crawl occasionally.  She is limited to occasional handling because of her limited wrist function.

c.      **Pyschological Consultation -Paul Rethinger, Ph.D.**
                                **Frank G. Lahman, Ph.D.**

Based on a review of medical records, Dr. Rethinger opined and Dr. Lahman concurred, that plaintiff suffers from a non-severe adjustment disorder with mixed anxiety and depression. Her only functional limitation arising from that disorder is mild difficulty in concentration, persistence, or pace.  Both psychologists note plaintiff is diagnosed with depression. Dr. Lahman diagnosed non-severe depression because plaintiff is not prescribed medication to treat depression, has received no treatment from a mental health professional, and engages in daily living activities that are not consistent with severe depression.

13 - OPINION AND ORDER

**ANALYSIS**

a.  **Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ did not give clear and convincing reasons for not crediting her testimony regarding the severity of her impairments.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the

claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here there is no evidence of malingering. The ALJ, however, found that plaintiff's "allegations as to the existence of her symptoms are only partially supported by the record," her treatment has been "routine in nature," and that treatment "has been "generally successful in controlling those symptoms." It is apparent the ALJ's concern with plaintiff's credibility is based in substantial part on his perception that the medical evidence is "relatively weak."

There is substantial evidence in the record to support the ALJ's finding that plaintiff's knee pain, low back pain, headaches, and depression are not severe impairments because the treatment plaintiff sought and received for those impairments was minimal and sporadic and there were no objective findings or other evidence to support a finding that those impairments are severe. Substantial evidence in the record also supports the ALJ's finding that plaintiff's obesity and associated sleep apnea are not severe impairments.

15 - OPINION AND ORDER

The medical record, however, also reflects plaintiff has undergone multiple surgical procedures, including four on her abdomen and colon, two on her wrists, and two on her feet, all in the space of two years. The surgical procedures on plaintiff's abdomen and colon and her left wrist may have been routine for the surgeon[s], but the medical records do not reflect they were routine for plaintiff, either in the preparation or her recovery. Moreover, contrary to the ALJ's finding, the court concludes the medical evidence regarding the adverse physical impact of those surgical procedures on plaintiff is compelling, not "relatively weak."

In addition, the court concludes the ALJ did not give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her impairments. The ALJ premised his rejection of plaintiff's evidence on his finding that plaintiff's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." Plaintiff's limited daily activities, however, were verified by the credible lay witness evidence presented by Kermit Johnson, which the court addresses below.

Based on this record, the court credits as true plaintiff's testimony as to the severity of her physical impairments relating to her abdomen, both wrists, and feet. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

b.  **Rejection of Lay Witness Evidence**.

Lay witness evidence as to a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Kermit Johnson, plaintiff's live-in friend, testified that plaintiff had difficulty using her hands and breathing, and suffered from stomach pains.  He corroborated her testimony that she quit her last job as an apartment manager because she had difficulty climbing stairs.

The ALJ found Johnson's evidence was "generally" credible but he rejected Johnson's testimony as to how and why plaintiff's impairments limit her daily activities and caused her to quit her last job because Johnson is not a doctor or vocational expert.

On this record, I conclude the ALJ improperly rejected Johnson's evidence as to the effect of plaintiff's physical impairments on her daily living activities and I credit that evidence as true.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2010).  See Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009)("A [wife as lay witness], . . . though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work activities.")

17 - OPINION AND ORDER

    c.    **The ALJ's Step 2 Findings**.

The ALJ found at Step 2 that plaintiff suffered from severe impairments relating to both wrists, and breathing difficulties.

Plaintiff contends the evidence also supported a Step 2 finding that she had other severe impairments, including sleep apnea, headaches, obesity, and knee, low back, foot, and abdominal pain, with resulting depression.

For the reasons stated above, the court concludes the ALJ erred in failing to find plaintiff has severe impairments relating to abdominal pain.

    d.    **The ALJ's Step 3 Finding**.

The ALJ found at Step 3 that plaintiff's impairments did not meet or equal a Listing and that she was able to do light work with certain restrictions.

The court agrees with the ALJ that the evidentiary record does not support a finding that plaintiff suffers from a listed impairment.  The court, however, finds the ALJ's finding that plaintiff is able to perform light work not supported by the record as a whole, because, at a minimum, the ALJ did not account for workplace limitations caused by plaintiff's abdominal pain.

    e.    **The ALJ's Step 4 Finding.**

The ALJ found plaintiff is able to engage in her past relevant work as a property manager, assistant manager in a fast food restaurant, or security guard.

18 - OPINION AND ORDER

For all the reasons set forth above, I conclude the ALJ, at a minimum erred in finding plaintiff is able to return to her work as a property manager because the ALJ failed to adequately address the evidence to the contrary presented by plaintiff and lay witness Johnson.

## REMAND

The court has the discretion whether to remand for further proceedings or for an immediate payment of benefits. *Benecke v. Barnhart,* 379 F.3d 587, 590 (9th Cir.2004). Evidence should be credited as true and an action remanded for an award of benefits when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) no outstanding issues remain that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true. *Id.* at 593; *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000).

On this record, the court concludes a remand for further proceedings is appropriate in which the ALJ shall credit as true evidence presented by plaintiff and lay witness Johnson, and in light of that evidence, revisit his finding at Step Four as to

19 - OPINION AND ORDER

plaintiff's residual functional capacity and her ability to perform her past relevant work, and if necessary and appropriate, to make a finding at Step Five as to plaintiff's ability to engage in other work.

## CONCLUSION

For all the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is **REMANDED** for further proceedings.

IT IS SO ORDERED.

DATED this 3  day of March, 2010.


                                                                              /s/   Malcolm F. Marsh
                                                 MALCOLM F. MARSH
                                                 United States District Judge